**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SHAWN B.,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:25-cv-17152 (KMW)<br><br>**OPINION** |

APPEARANCES:

**Shawn B.**
2320 Market Street Port Norris
Cumberland, NJ 08349

*Plaintiff Pro Se*

**Shawn Cheree Carver, Special Assistant United States Attorney**
Social Security Administration
6401 Security Blvd.
Baltimore, MD 21235

*Counsel for Defendant, Frank Bisignano, Commissioner of Social Security*

**WILLIAMS, District Judge:**

This matter comes before the Court on an appeal by Plaintiff Shawn B.[1] ("Plaintiff") from a denial of Social Security disability insurance benefits by the Commissioner of Social Security ("Commissioner"). (Compl., ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **VACATES** the Commissioner's final decision and **REMANDS** this case for further proceedings consistent with this Opinion.

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

## I. PROCEDURAL HISTORY

On October 31, 2022, Plaintiff filed an application seeking disability insurance benefits, alleging an onset of disability of January 1, 2018. (A.R. 184.) The application was denied initially on December 20, 2022 (A.R. 105), and denied again upon reconsideration on May 23, 2023. (A.R. 119.) On July 13, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. 122.) On February 12, 2024, a hearing was held before the ALJ. (A.R. 55.) On August 29, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (A.R. 32-52.) Plaintiff appealed the ALJ's decision to the Appeals Council. (A.R. 1-4.) The Appeals Council denied Plaintiff's request for review on August 27, 2025, rendering the ALJ's decision final. (A.R. 1.)

On November 3, 2025, Plaintiff timely appealed the matter to this Court seeking review pursuant to 42 U.S.C. § 405(g). (Compl., ECF No. 1.) Plaintiff asserts that the ALJ committed legal error when he refused to consider evidence that established a medical condition that existed prior to Plaintiff's date last insured. (*Id.*) Evidence of this condition was obtained and submitted following the hearing on February 12, 2024 but before the ALJ rendered a decision on August 29, 2024. Plaintiff contends that this evidence would have impacted the ALJ's determination of Plaintiff's residual functional capacity ("RFC") and would have resulted in a finding of disability. (*Id.*)

## II. STANDARD OF REVIEW

When reviewing a final decision of an ALJ as to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Morales v.*

*Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999)). It is "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence[.]'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). A court may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983). The Court's review of legal issues is plenary. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). A court can overturn a decision made by an ALJ, even if supported by substantial evidence, upon a finding that the decision was based upon incorrect legal standards. *See Friedberg*, 721 F.2d at 447.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). Before the ALJ, "[t]he

burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citation omitted). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" [*Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Id.* at 201–02.

The plaintiff bears the burden on appeal of showing not merely that the ALJ erred, but that the error was harmful. As the Supreme Court has said regarding judicial review of a governmental

agency decision, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"). That is, the plaintiff must "explain[ ] . . . how the . . . error to which he points could have made any difference." *Shinseki*, 556 U.S. at 413.

## III. FACTUAL BACKGROUND[2]

Plaintiff raises only one challenge on appeal: that the ALJ committed harmful error by failing to consider the medical records submitted after the hearing but before the ALJ rendered his written decision. The Court limits its discussion of the record to the evidence bearing on this sole issue. This recitation is not comprehensive.

Of note here, the ALJ concluded at Step One that Plaintiff last met the insured status required of the Social Security Act on June 30, 2021. (A.R. 37.) As such, Plaintiff was required to prove that his disability started prior to that date. At Step Two, the ALJ found that Plaintiff had the following severe disorders: thoracic and lumbar degenerative disc disease status post discectomy and laminectomy (11/2019), arthritis, gout, and anxiety and panic disorders. (A.R. 38.) At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (A.R. 39.) At Step Four, the ALJ defined Plaintiff's RFC as follows: "capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand/walk for 2 hours total in an 8-hour workday. He can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. He can occasionally balance on narrow or slippery surfaces. He can occasionally stoop, kneel, crouch, and crawl. He can tolerate occasional concentrated

---

[2] The Court recites only the facts that are necessary to its determination on appeal.

exposure to pulmonary irritants. He cannot tolerate exposure to workplace hazards (such as unprotected heights and hazardous machinery). He is able to carry out simple, routine tasks; can carry out those tasks for 2-hour periods throughout a 40-hour workweek. He is able to make simple work-related decisions. He can tolerate occasional interactions with supervisors, coworkers, and the general public. He can deal with occasional, simple changes in the work routine." (A.R. 41.) Finally, the ALJ concluded that through the date last insured, Plaintiff was unable to perform his past relevant work as an oyster packer and worker and an offset printer operator, but there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including small product assembler, labeler, and bench inspector. (A.R. 46-47.) Consequently, the ALJ found that Plaintiff is not disabled. (A.R. 47.)

In reaching this decision, the ALJ noted, *inter alia*, the following evidence concerning Plaintiff's progressively worsening back pain and numbness in his leg:

> The claimant alleged that he has used a walker to ambulate when he goes outside for the past 4 months. He endorsed that his lower back and left leg pain has worsened since 2018. He frequently needs to change positions from standing to sitting and vice versa. He experiences left leg numbness that began in 2017. The claimant has attended two sessions of physical therapy. The claimant has had arthritis since approximately 2017. He alleged that nothing has helped with his pain symptoms, and he testified that he does not take pain pills. His lower back surgery did not improve his symptoms of lower back pain radiating to his lower extremities.
>
> . . .
>
> From September 19, 2018 to September 20, 2018, the claimant received inpatient treatment after he presented to the Emergency Department complaining of generalized weakness and numbness in his bilateral lower extremities after he fell and could not put any pressure on his legs.
>
> . . .
>
> On August 1, 2019, the claimant reported to Dr. Talbot that he experiences left leg numbness and burning in his left foot. The claimant denied weakness in his left lower extremity. Dr. Talbot observed that the claimant exhibited decreased sensation throughout his left leg and groin.

. . .

> From August 7, 2019 to November 11, 2019, the claimant reported to Dr. Joseph Bernardini, a treating orthopedic surgeon, that he experienced lower back pain and left leg numbness. Dr. Bernardini observed that the claimant reported pain with straight leg raising on the ipsilateral left, [exhibited] slight weakness in extensor of the left leg, and reported numbness in his thighs bilaterally. . . . Dr. Bernardini noted that the claimant's lower back pain persisted despite physical therapy and prescribed the claimant Clinoril, Cyclobenzaprine, and Percocet[.]
>
> . . .
>
> On November 19, 2019, the claimant underwent a left L4-5 laminotomy and discectomy[.]
>
> . . .
>
> On December 12, 2019, the claimant reported to Dr. Robert Greenleaf, a treating orthopedic surgeon, that he experiences chronic lower back pain and left leg numbness. The claimant noted that his symptoms have not changed compared to how he felt previous to the surgery. . . . Dr. Greenleaf determined that the claimant no longer has a compressed nerve following surgery[.]
>
> . . .
>
> On July 23, 2021, the claimant reported to Dr. James Sanfilippo, a treating spine surgeon, that he experiences left sided lower back pain with associated numbness down the entire length of his left leg. Dr. Sanfilippo observed that the claimant exhibited pain with range of motion in his lumbar spine, 4/5 motor strength in the left tibia, and decreased sensation in the whole left leg. . . . Dr. Sanfilippo referred the claimant to physical therapy because his left leg numbness and weakness remain despite surgery[.]
>
> . . .
>
> On August 12, 2021, the claimant reported to Dr. Greenleaf that he experiences lower back pain with numbness in his entire left leg. The claimant also reported that he has fallen multiple times. The claimant explained that his lower back pain and left leg numbness have not improved since surgery.

(A.R. 42-45.) The evidence considered by the ALJ thus demonstrated that Plaintiff began complaining of back pain, leg pain, and numbness in 2017 and that such complaints continued in subsequent years.

On February 6, 2024, four business days prior to the February 12, 2024 hearing, Plaintiff's counsel requested a postponement of the hearing. (A.R. 174.) The proffered reason for the request was that Plaintiff "has recently began treating again and is undergoing diagnostic testing which will be relevant to his disability." (*Id.*) Plaintiff's counsel asked for a postponement "so [Plaintiff] can get the updated treatment and diagnostic testing for his disability." (*Id.*) The ALJ refused to postpone the hearing but agreed to leave the record open for submission of additional medical records after the hearing. (A.R. 175.)

During the hearing, the ALJ and Plaintiff's counsel engaged in the following dialogue concerning the submission of additional medical records:

> ALJ: I understand that you do expect to have additional medical records possibly even from anticipated treatment. How much time would you like me to leave the record open for those record[s]?
>
> ATTY: Well, in light of what has developed it's, my client is now going back into treatment with the Penn Medicine who is evaluating new MRIs and EMGs for another possible surgery. So the EMG is completed and the MRI is pending. So it seems that we, I would request as much time as the Court would permit given that situation. . . .
>
> ALJ: Okay. So I'll keep the record open then for 30 days and as we [get] closer to that time, if you have more specific information and would like me to extend the time, please write to me.
>
> ATTY: Yes, I do anticipate at minimum 60. Is it possible to keep it open for 60?
>
> . . .
>
> ALJ: Okay. I'll leave the record open then for 60 days. And if it turns out that you're able to complete the record before then please write to me so that I know that it could be . . . complete before that. All right. So I'll now go ahead and admit the documents that we do have currently, Exhibits 1A through 4A, 1B through 14B, 1D through 6D, 1E through 11E, and 1F through 11F.

(A.R. 56-58.)

On April 4, 2024, Plaintiff's counsel requested that the record remain open for an additional

thirty days. (A.R. 278.) The ALJ agreed to keep the record open through May 16, 2024. (A.R. 35, 279.) Plaintiff's counsel subsequently submitted additional medical records, as well as a brief dated May 16, 2024 that was accepted by the ALJ. (A.R. 35, 280-286.)

In the supplemental brief, Plaintiff's counsel argued that the additional medical records obtained subsequent to the hearing demonstrate that Plaintiff continued to seek treatment for leg weakness, lower left extremity numbness and back pain that did not improve after his back surgery in 2019. (A.R. 283.) Counsel noted that on March 21, 2024, following an MRI of the cervical spine, doctors determined that Plaintiff had a "large expansile spinal cord lesion at [the] T1-T2 level" which was "suggestive of [a] cavernous malformation like cavernous hemangioma or hemorrhagic intramedullary spinal cord tumors." (A.R. 284.) Plaintiff's counsel noted findings by a "tumor board" that "determined the T1-2 cavernoma was causing progressive symptomology." (A.R. 285.) Counsel argued that while Plaintiff was previously advised that his "pain and numb related symptoms in 2019 would resolve with extended time . . . it [has] now been established that [Plaintiff] is experiencing a tumor in his spine that was not properly diagnosed during his treatment in 2019 which will now require additional surgery." (A.R. 285-86.) Plaintiff's counsel argued that Plaintiff is disabled pursuant to medical rule 201.14 or, alternatively, a finding of disability because he is unable to stay on task in an unskilled job. (A.R. 286.)

Notwithstanding Plaintiff's submission of records and a brief within an extended timeframe approved by the ALJ, the ALJ did not admit the records into evidence on grounds of timeliness. In his August 29, 2024 written decision, the ALJ noted that he denied Plaintiff's February 6, 2024 request to postpone the hearing based on new treatment, "because the postponement was not necessary" and said that "[i]nstead of postponing, [he] left the record open a sufficient amount of time for the updated medical records to be submitted, granted an extension[,] and accepted a post-

hearing brief[.]" (A.R. 35.) Despite this extension, however, the ALJ further stated that he declined to admit the evidence because "[t]he claimant submitted or informed [him] about additional written evidence less than five business days before the scheduled hearing date," finding that "the requirements of 20 CFR 404.935(b) were not met." (*Id.*) The ALJ explained that "[t]he evidence was not submitted after leaving [the] record open for a sufficient amount of time following the hearing." (*Id.*)

## IV. DISCUSSION

For the reasons set forth below, the Court finds that remand of this case is warranted. Plaintiff's counsel argued to the ALJ that the medical records submitted after the hearing indicated that Plaintiff had a previously undiagnosed spinal cavernoma of the thoracic spine, which may have contributed to Plaintiff's symptoms that first appeared in 2017 and progressively worsened in subsequent years. Although the diagnosis was not established until 2024, the records submitted by Plaintiff after the hearing identify a medical condition with progressive symptomology that may have arisen prior to Plaintiff's date of last insured in 2021. It appears that these records were not submitted prior to the hearing but were submitted within the subsequent time frame permitted by the ALJ.

Under 20 C.F.R. § 404.935(a), a claimant "must inform [the agency] about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). If a claimant fails to comply with this "five-day rule," the ALJ may decline to consider or obtain the evidence. *Id.* However, where the ALJ has not yet issued a decision, the ALJ must accept the evidence, even if the claimant did not comply with § 404.935(a), when: (1) the claimant was misled by some action of the agency; (2) the claimant had a "physical, mental, educational, or linguistic limitation" that prevented the claimant from informing the agency about

or submitting the evidence earlier; or (3) "[s]ome other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [the claimant] from informing [the agency] about or submitting the evidence earlier." 20 C.F.R. § 404.935(b)(1)-(3). The regulation provides a non-exhaustive list of examples of unavoidable circumstances, including: (1) the claimant was prevented from contacting the agency due to his or her own serious illness; (2) there was a death or serious illness in the claimant's immediate family; (3) important records were destroyed or damaged by fire or other accidental cause; or (4) the claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than five business days prior to the hearing." 20 C.F.R. § 404.935(3)(i)-(iv).

The role of the ALJ is to oversee the process and, when necessary, to ensure proper development of the record. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). In rendering a decision, an ALJ must not only identify "the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* An ALJ's failure to comply with this mandate is legal error. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

Here, the ALJ was aware that Plaintiff was still treating at the time of the hearing, declined Plaintiff's request to postpone the hearing, and agreed to keep the record open for the submission of additional medical records. Despite granting an extension of time to submit updated medical records and Plaintiff's submission of such records within the extended time frame, the ALJ then inexplicably declined to admit the additional evidence on the basis that it was not timely submitted.

(A.R. 35.) The ALJ stated that he "decline[d] to admit this evidence because the requirements of 20 CFR 404.935(b) were not met[,]" though he failed to provide any explanation as to why the submission was untimely when he agreed to keep the record open until May 16, 2024 and additional evidence was submitted by that date. Moreover, the ALJ did not address why any of the exceptions set forth in § 404.935(b) did not apply. The regulation provides an exception for "some other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control." 20 CFR § 404.935(b)(3). As the ALJ failed to explain how he determined that none of those circumstances existed, particularly given that Plaintiff was still treating and the records did not exist prior to the hearing, it is not apparent to the Court whether the ALJ properly excluded such evidence from the record.

Furthermore, while the ALJ stated that he declined to admit evidence submitted after the hearing, it appears he considered at least one of the post-hearing exhibits in rendering his decision. In this regard, the ALJ admitted only Exhibits 1F through 11F at the hearing. (A.R. 58.) His written decision identifies Exhibits 1F through 27F, and it thus appears that Exhibits 12F through 27F were submitted subsequent to the hearing. (A.R. 50-52.) Despite his statement that he would not admit any records submitted after the hearing, the ALJ referred to Exhibit 13F in his written decision (A.R. 45), though he otherwise did not discuss or refer to any other post-hearing exhibits. Accordingly, it is unclear whether the ALJ considered but merely failed to discuss the remaining exhibits, notwithstanding his statement that he would not admit them, or whether he considered only Exhibit 13F. If he considered only Exhibit 13F, the reason that he accepted this lone post-hearing exhibit is not evident from the written decision.

In light of the foregoing, the Court cannot ascertain the reason that the ALJ refused to consider evidence as untimely when he agreed to keep the record open, why an exception under §

404.935(b) did not apply, and/or whether the additional evidence was actually considered by the ALJ. The ALJ's failure to acknowledge or address the post-hearing medical records in his decision is not harmless error, because such records identify a newly-diagnosed medical condition that may have had an impact on the ALJ's assessment of whether Plaintiff had a disability prior to his date of last insured or the formulation of the RFC. More specifically, the ALJ did not address whether Plaintiff's spinal cavernoma was a serious condition arising before his date of last insured and rendering him disabled at Steps 2 and 3 and/or whether the RFC should include limitations that accounted for this condition.[3] Since this analysis could have impacted the ALJ's conclusion that Plaintiff did not have an impairment listed in the regulations, or could have resulted in a finding that additional limitations were appropriate in the RFC that may have impacted the occupational base for the types of work that Plaintiff could perform, the ALJ's failure to consider the post-hearing records could have affected the ultimate outcome in this case.

Thus, the ALJ erred in providing no discussion of, or explanation for, his determination that Plaintiff's post-hearing records were untimely, despite the extension of time granted by the ALJ, or that no special circumstances set forth in 20 C.F.R. § 404.935(b) existed in this case. While the ALJ is certainly permitted to exclude later submitted evidence from the record, the Court finds that the ALJ's justification for his decision to do so in this case is simply insufficient. Thus, remand is required to allow for further discussion as to the ALJ's decision whether or not to exclude the evidence at issue.

---

[3] The Court notes that Exhibit 27F, Progress Notes from Gabrielle Santangelo, M.D. dated April 5, 2024, identifies a "T1-2 lesion likely cavernoma causing progressive symptomology" and indicated "[p]rogressively worsening L sided numbness, ambul[]ation. Symptoms have been steady. Slow decline over the past 5 years." (A.R. 800.)

## V. CONCLUSION

In summary, the ALJ was aware that additional information was available but relied on procedural rules to exclude evidence he had agreed could be submitted after the hearing. The ALJ's failure to develop the record and articulate those records he considered, those records he did not consider, and the basis for his decision to exclude records submitted subsequent to the hearing requires remand. Consequently, the Court vacates the decision of the ALJ and remands the case to the Commissioner. On remand, the Commissioner must determine whether the post-hearing records submitted by Plaintiff pursuant to an extension granted by the ALJ should have been accepted for consideration in accordance with 20 C.F.R. § 404.935(a) and (b). If those records should have been accepted, they should be considered and weighed in determining whether Plaintiff is disabled.

An appropriate Order follows.

Dated: October 23, 2026

**KAREN M. WILLIAMS**
**United States District Judge**